**FOR PUBLICATION**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | : Bankruptcy Case No. 11-27574 |
|  | : |
| PATRICIA KOPEC | : Chapter 13 |
|  | : |
| Debtor | : |
|  | : **OPINION** |
|  | : |
|  | : |

**APPEARANCES:**

Donald Quigley, Esquire
QUIGLEY & FAYETTE, L.L.C.
1675 Whitehorse-Mercerville Road – Suite 204
Hamilton, New Jersey 08619
Attorney for Debtor

Mr. Richard Pisciotta
P.O. Box 234
Barnegat Light, New Jersey 08006
Creditor Pro Se

Procedural history

Patricia Kopec filed a Chapter 13 petition on June 7, 2011. After confirmation, the Debtor filed a motion to modify the claim filed by Richard Pisciotta.[1] The court held a status conference on March 21, 2012, and the parties agreed that the court should rule on the motion to modify the claim rather than await further guidance on this issue from the Third Circuit Court of Appeals.[2]

Factual background

In May 2001, Richard Pisciotta purchased a Certificate of Sale for Unpaid Municipal Liens for the Debtor's property located at 27 Tuttle Avenue, Hamilton, NJ 08629. Mr. Pisciotta paid subsequent municipal liens on the property. The Debtor's Chapter 13 plan proposed to pay Mr. Pisciotta $72,050.36 at an interest rate of 4%. Mr. Pisciotta filed a proof of claim in the amount $83,027.40 with interest rates of 14 and 18%.[3] The court confirmed the plan by order dated September 2, 2011.

The parties have agreed that the amount due as of the petition date was $64,457.59. With the amount of the claim no longer disputed, the sole issue before the court is the appropriate interest rate over the life of the plan.

---

[1] D.N.J. LBR 3015-6(b) provides that the "right of the debtor to file an objection to the allowance of a claim pursuant to D.N.J. LBR 3007-1 is preserved, without the need for oral or written reservation at confirmation."

[2] The Debtor's Chapter 13 plan proposed to modify the interest rate on Mr. Pisciotta's claim based on the holding in In re Princeton Office Park, LLP, 423 B.R. 795 (Bankr. D.N.J. 2010). The Princeton Office Park decision was affirmed by the District Court and is currently on appeal to the Third Circuit Court of Appeals, which has certified the question to the New Jersey Supreme Court.

[3] D.N.J. LBR 3015-6(b) provides that "a proof of claim filed that asserts a claim that is greater than, either the scheduled amount of the claim or the amount of the claim as designated in the plan serves as an objection to confirmation as to the amount of the claim, without appearance by the creditor at the confirmation hearing … The plan may be confirmed using the amount asserted in the proof of claim."

Discussion

In support of proposing an interest rate of 4% rather than the statutory rate of 18%, the Debtor relies on the decision in In re Princeton Office Park, L.P.[4], which holds that under New Jersey law, a tax-sale certificate holder does not have a "tax claim" within the meaning of § 511(a); therefore, the interest rate may be modified. Mr. Pisciotta counters that the Princeton Office Park decision is incorrect because it fails to take into account N.J.S.A. 54:4-67, N.J.S.A. 54:5-43, and N.J.S.A. 54:5-57.

Analysis of this issue must begin with the controlling Bankruptcy Code provision. As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress added a new provision to the Bankruptcy Code to address the appropriate interest rate to apply to the payment of tax claims. Section 511 now provides:

> [i]f any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.[5]

The legislative history explains that the provision was deemed necessary because under "current law, there is no uniform rate of interest applicable to tax claims. As a result, varying standards have been used to determine the applicable rate." The stated goal of § 511 was to simplify the interest rate calculation.[6] As can be seen in this matter, however, the new provision merely shifted the focus of the debate from the appropriate interest rate to what constitutes a "tax claim". The term "tax claim" is not defined in the Bankruptcy Code, so the court must look elsewhere for guidance.

---

[4] 423 B.R. 795 (Bankr. D.N.J. 2010)
[5] 11 U.S.C. § 511(a)
[6] See, H.R. Rep. No. 109-31 at 101 (2005)

Other reported decisions

Because § 511 is a relatively new addition to the Bankruptcy Code, there are a limited number of cases interpreting it.  The sole decision from a Circuit Court of Appeals is Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan).[7]  The Kizzee court held that a tax lien holder has a "tax claim" for purposes of § 511.  Although that case interpreted Texas law, which provides that the transferee of a tax lien is subrogated to the rights of the taxing unit, many of the court's observations are of general application.

The debtor in Kizzee, like the Debtor here, argued that the tax claim was extinguished upon the payment of the taxes and replaced with a new obligation.  The court disagreed, noting that the only thing that changed was the entity to which the taxes were owed, not the nature of the underlying debt.[8]  The court expressed doubt that the tax lien could be properly transferred if the tax debt were extinguished.[9]  This court has the same concern.  It is uniformly accepted that a lien, whether equitable or legal, is nothing more than a means of satisfying a claim for the recovery of money.[10]  If there is no debt, there is no lien.  As one court explained:

> A lien can only legally attach if there is an underlying debt secured by the lien.  A lien is a charge upon property for the payment or discharge of a debt. It is therefore dependent upon the existence, the amount of, and the provability of the debt. If the debt has been paid ..., the lien is extinguished.[11]

That logic is equally applicable in the context of municipal tax sale certificates.  If the tax debt is extinguished when the municipality receives its payment from the third-party purchaser, then it calls into question the validity of the tax sale certificate because there is no debt to support it.

---

[7] 626 F.3d 239 (5th Cir. 2010)
[8] Kizzee at 244
[9] Kizzee at 244-45
[10] Dept. of the Army v. Blue Fox, Inc., 525 U.S. 255, 262–63 (1999)
[11] Satsky v. United States, 993 F. Supp. 1027, 1029 (S.D. Tex. 1998)

In In re Cortner,[12] the court also held that the holder of a tax sale certificate has a "tax claim" for purposes of § 511.  That case applied Ohio law, which differs significantly from New Jersey law, but as with Kizzee, there are some universally applicable observations in the decision.  The most compelling observation is that in enacting § 511, Congress chose to use the broad term "creditor", rather than the narrower term "governmental units" used in other Code sections.[13]  That choice of language lends textual support to the conclusion that the term "tax claim" in § 511 was intended to be broader than a debt owed to a taxing authority for unpaid taxes, and thus can encompass a third-party holder of a tax sale certificate.

The court in In re Meyhoeffer, reached the same conclusion applying New York law.[14] The Meyhoeffer court was unpersuaded by the argument that the holder of a tax certificate does not have a "tax claim" because the rights of the holder are not coextensive with the rights of the municipality.  Similarly, the Fifth Circuit Court of Appeals in Kizzee rejected the argument that a tax lien holder does not have a § 511 "tax claim" because it has a different bundle of rights than the taxing authority.  That reasoning is significant for this court's analysis because under New Jersey law, a municipality enjoys more expansive rights than the holder of a tax sale certificate.

New Jersey law

State law governs the substance of claims in bankruptcy,[15] therefore, it is instructive to look to state law to elucidate the meaning of the phrase "tax claim".  In New Jersey, the authority to sell tax liens derives from the Tax Sale Law.[16]  The Tax Sale Law provides that when municipal taxes are delinquent for the period stated by statute, a lien arises on the land on which

---

[12] 400 B.R. 608 (Bankr. S.D. Ohio 2009)
[13] Id. at 613 (citing In re Davis, 352 B.R. 651 (Bankr. N.D. Tex. 2006))
[14] 459 B.R. 167 (Bankr. N.D.N.Y. 2011), *but see*, In re Duffy, 452 B.R. 13 (Bankr. N.D.N.Y. 2010) (reaching opposite conclusion)
[15] Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15 (2000)
[16] N.J.S.A. 54:5-1, *et seq.*

the taxes are assessed.[17]  The municipality may enforce the lien by selling the property as prescribed by statute.[18]  The purchaser pays the amount of the taxes owed plus interest and costs of the sale in exchange for a certificate of sale.[19]  The transaction is not an outright conveyance of the property; the property owner may redeem the certificate for two years after the tax sale.[20]  The New Jersey Supreme Court has commented that it is the public policy of the state, as expressed by the Legislature in the Tax Sale Law, to encourage tax sales to assist municipalities in the collection of delinquent taxes.[21]  The Supreme Court has also noted that the tax sale law is remedial legislation that should be liberally construed.[22]

There are two decisions applying New Jersey law to this issue.  In Princeton Office Park, the court proffered a variety of reasons for its holding (including that the rights accorded to a tax lien certificate holder under New Jersey law differ from those of the municipality) but the linchpin of the decision was that the underlying taxes had been paid.  Judge Kaplan reasoned that "there is no transfer of a tax claim, as the taxes are paid in full at the conclusion of the tax sale."[23]  The court conceded that had the municipality assigned or subrogated its rights to the creditor, the court would have found that the tax sale certificate holder had a "tax claim", but "[a]bsent such proof of assignment or subrogation, the Court is constrained to find that, in New Jersey, the purchaser of a tax sale certificate acquires a statutory lien claim, not a tax claim, and is therefore not entitled to the protection of § 511(a)."[24]

---

[17] N.J.S.A. 54:5-6
[18] N.J.S.A. 54:5-19
[19] N.J.S.A. 54:5-46
[20] N.J.S.A. 54:5-58
[21] Varsolona v. Breen Capital Services Corp., 180 N.J. 605 (2004)
[22] Id.;  see also, N.J.S.A. 54:5-3

[23] Id. at 804
[24] Id. at 805-06

In <u>In re Burch</u>,[25] Judge Wizmur adopted the reasoning in <u>Princeton Office Park</u> and, after reviewing some state court opinions, opined that "[t]he conclusion is inescapable that upon the purchase of a tax sale certificate, the municipality's tax claim is extinguished, leaving only a redeemable debt due from the property owner to the purchaser, which is secured by a lien on the property."[26] So, the fulcrum of both decisions is that under New Jersey law, a tax sale extinguishes the debt and a new debt comes into existence.

<u>Analysis</u>

Three primary concerns compel this court to reach a different result: 1) statutory provisions that indicate that a municipality's tax claim is not extinguished upon the sale of the certificate; 2) the conundrum of having a lien without any concomitant debt; and 3) principles of statutory interpretation.

On the first issue, there are two New Jersey statutory provisions that neither <u>Princeton Office Park</u> nor <u>Burch</u> addresses. The first is N.J.S.A. § 54:5-43, which governs refunds to purchasers when a tax sale is set aside. The statute provides that: "If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale and **all his interest in the tax**, assessment or other charges and in the municipal lien therefore …."[27] That language strongly suggests that the claim of the holder of a tax sale certificate is based on the underlying tax. The other provision in the Tax Sale Law that supports the conclusion that the tax debt is not fully extinguished is N.J.S.A. § 54:4-67(c), which defines delinquency. It states:

> "Delinquency" means the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years. The property shall remain delinquent, as defined herein, until such time

---

[25] 2010 WL 2889520 (Bankr. D.N.J. July 15, 2010)
[26] <u>Id.</u> at *5
[27] N.J.S.A. § 54:5-43 (emphasis added)

> as all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been fully paid and satisfied. **The delinquency shall remain notwithstanding the issuance of a certificate of sale** pursuant to R.S. 54:5-32 and R.S. 54:5-46, the payment of delinquent tax by the purchaser of the total property tax levy pursuant to section 16 of P.L. 1997, c. 99 (C. 54:5-113.5) and for the purposes of satisfying the requirements for filing any tax appeal with the county board of taxation or the State tax court.[28]

Those two statutory provisions read together compel this court to conclude that the tax debt is not fully extinguished upon the sale of the tax certificate.

That leads to the second issue. If, as <u>Princeton Office Park</u> and <u>Burch</u> held, the tax debt is fully extinguished, the court is unable to discern the source of the new debt. This court is uncomfortable with the contrived position that a brand new debt, completely divorced from the underlying tax debt, arises upon the purchase of the tax sale certificate. The lien itself arises by virtue of the Tax Sale Law, but, as previously discussed, a lien and the underlying debt are distinct.[29] What is the genesis of the debt that supports this new statutory lien?

The distinction between the lien and the debt is the crucial piece of the puzzle that this court finds is insufficiently addressed in other opinions. The <u>Burch</u> opinion observes that the "lien secures the obligation of the property owner to repay the purchaser, but the tax debt has been satisfied."[30] Respectfully, that is a faulty premise because the property owner is not obligated to repay the purchaser of the tax sale certificate. The property owner may choose to redeem the tax sale certificate to save the home from a foreclosure sale, but the property owner is not statutorily obligated to redeem. Unlike a foreclosure sale resulting from the failure to pay a mortgage, no deficiency claim arises if the property owner fails to redeem. So, it is inaccurate to state that the debt underlying the lien represented by the municipal tax sale certificate is "the

---

[28] N.J.S.A. § 54:4-67(c) (emphasis added)
[29] <u>Dept. of the Army v. Blue Fox, Inc.</u>, 525 U.S. 255, 262–63 (1999)
[30] 2010 WL 2889520 at *4

obligation of the property owner to repay the purchaser". That begs the question: if the debt is not the redemption amount, then what is it? The logical answer is that the debt is the original tax debt.[31] As explained by the Appellate Division, a "tax sale certificate is not an outright conveyance. It creates only a lien on the premises and conveys the lien interest of the taxing authority."[32] The "lien interest of the taxing authority" would certainly appear to be a "tax claim".

Third, the court finds that principles of statutory construction support a finding that the holder of a tax sale certificate has a "tax claim". It is a bedrock principle of statutory interpretation that analysis begins with the language of the statute.[33] Although the focus of the debate in the decisions on this issue has been on Congress' use of the term "tax claim" in § 511, this court finds it significant that § 511 also contains the phrase "administrative expense tax". The most logical conclusion to be drawn from the use of different terms is that a "tax claim" and a "tax" are different things; otherwise, Congress would have been consistent and used the term "administrative expense tax claim". Because courts are instructed to try to give meaning to each word in a statute, the court must conclude that the scope of a "tax claim" and a "tax" are different, and that the former term is more inclusive than the latter. As previously discussed, this conclusion is buttressed by the use of the term "creditor" in § 511, rather than "governmental unit". If Congress desired the term "tax claim" to be limited to a claim for taxes owed to a taxing authority (or those subrogated to those rights), then there is no reason to use the term "creditor".

---

[31] The District Court in <u>Kizzee</u> noted that "a tax claim is a debt originally owed directly to a governmental unit for unpaid ad-valorem property taxes." 2009 WL 3186727 *1 (S.D. Tx. Sept. 28, 2009)
[32] <u>Savage v. Weissman</u>, 355 N.J. Super. 429 (App. Div. 2002)
[33] <u>In re Philadelphia Newspapers, LLC</u>, 418 B.R. 548 (3d Cir. 2009)

Finally, the court notes that this ruling is consistent with the New Jersey legislature's directive that the Tax Sale Law is remedial legislation that is to "be liberally construed to effectuate the remedial objectives thereof."[34] An interpretation of the Tax Sale Law that discourages parties from purchasing tax sale certificates runs counter to the objective of "transform[ing] a non-performing asset into cash without raising taxes."[35]

## Conclusion

The court finds that the holder of a tax sale certificate has a "tax claim" for purposes of § 511, and the interest rate in a Chapter 13 plan must be determined under New Jersey law.[36] The Debtor's motion to modify the claim of Richard Pisciotta is denied. The Debtor should amend his plan in accordance with this opinion within 14 days.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: June 20, 2012

---

[34] N.J.S.A. § 54:5-3
[35] Varsolona v. Breen Capital Services Corp., 180 N.J. 605, 609 (2004)
[36] As far as New Jersey law is concerned, this court agrees with the views expressed by Judge Kaplan that this might be an opportune time for the New Jersey legislature to address the oppressive interest rates allowed under the Tax Sale Law. *See*, Princeton Office Park at 806, n. 10.